JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Tara Cave | Cintas Corporation |

| (b) County of Residence of First Listed Plaintiff    Philadelphia | County of Residence of First Listed Defendant    Warren County, OH |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) ~~A~~ttorneys *(Firm Name, Address, and Telephone Number)*<br>Caren N. Gurmankin, Esq., Console Mattiacci Law,<br>1525 Locust Street, 9th Fl., Philadelphia, PA 19102 | Attorneys *(If Known)* |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 42 U.S.C. §1981; 42 U.S.C. § 12101, et seq.

Brief description of cause:
Plaintiff was discriminated against based on her race.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.     **DEMAND $** in excess of $75,000     CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*    JUDGE _____    DOCKET NUMBER _____

DATE
08/04/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA 19146 _____

Address of Defendant: _____ 6800 Cintas Boulevard, Mason, OH 45040 _____

Place of Accident, Incident or Transaction: ____ 4700 West Jefferson Street, Philadelphia, PA 19131 ____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/04/2021     *Attorney-at-Law / Pro Se Plaintiff*     205900   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**   *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ Caren N. Gurmankin ___, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 08/04/2021     *Attorney-at-Law / Pro Se Plaintiff*     205900   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

| | | |
|---|---|---|
| TARA CAVE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CINTAS CORPORATION | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( X )

| | | |
|---|---|---|
| 08/04/2021 | _[signature]_ | Plaintiff, Tara Cave |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――   :
                                              :
TARA CAVE                          :
Philadelphia, PA 19146       :
                                              :          CIVIL ACTION NO.
                    Plaintiff,        :
                                              :
        v.                                :
                                              :
CINTAS CORPORATION      :
6800 Cintas Boulevard         :
Mason, OH 45040                 :
                                              :          JURY TRIAL DEMANDED
                                              :
                    Defendant.      :
―――――――――――――――――   :

## COMPLAINT

## I.  INTRODUCTION

Plaintiff, Tara Cave, brings this action against her former employer, Cintas Corporation ("Defendant").  After Plaintiff demonstrated excellent performance over fourteen (14) years of employment, Defendant terminated her based on her complaints about the discriminatory conduct to which it was subjecting her and other black female employees, and shortly after Plaintiff advised Defendant of her medical conditions and requested accommodations for the same.

Defendant's discriminatory and retaliatory conduct towards Plaintiff violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. §1981 ("Section 1981"); the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"); and, the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO").

## II.    PARTIES

1.      Plaintiff, Tara Cave, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.      Plaintiff is female.

3.      Plaintiff is Black.

4.      Since in around 2013, Plaintiff worked out of Defendant's location at 4700 West Jefferson Street, Philadelphia, PA 19131.

5.      Defendant, Cintas Corporation, is incorporated in Washington with a principal place of business at 6800 Cintas Boulevard, Mason, OH 45040.

6.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

7.      At all times material hereto, Defendant employed more than fifteen (15) employees.

8.      At all times material hereto, Defendant acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant' business.

9.      At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III.   JURISDICTION AND VENUE

11.     The causes of action which form the basis of this matter arise under Title VII, Section 1981, the ADA, the PHRA, and the PFPO.

12.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

13.     The District Court has jurisdiction over Count II (Section 1981) pursuant to 28 U.S.C. §1331.

14.     The District Court has jurisdiction over Count III (ADA) pursuant to pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

15.     The District Court has jurisdiction over all counts pursuant to 28 U.S.C. §1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000), exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiff is a citizen of the Commonwealth of Pennsylvania and Defendant is not a citizen of the Commonwealth of Pennsylvania.

16.     The District Court has supplemental jurisdiction over Count IV (PHRA) and Count V (PFPO) pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

18.     On or about April 17, 2020, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein.  This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

19.     On or about May 12, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue for her Complaint of Discrimination.  Attached hereto, incorporated herein, and

marked as Exhibit "2" is a true and correct copy of the Notice of Right to Sue (with

personal identifying information redacted).

20.     Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

**IV.     FACTUAL ALLEGATIONS**

21.     Plaintiff began working at Defendant on or about December 19, 2005.

22.     As of the time of Plaintiff's termination, she had held the position of

Office Manager for over nine (9) years.

23.     As of the time of Plaintiff's termination, she reported to Jonathan Baker

(white), General Manager.  Baker reported directly to Greg Birkenhauer (white), Vice

President, Operations, Group Vice President for Mid-Atlantic Group, Rentals Division.

Birkenhauer reported directly to Jim Rozakis (white), Rental Division President and

Chief Operating Officer.

24.     At all times material hereto, Plaintiff consistently demonstrated excellent

performance throughout her employment with Defendant.

25.     Throughout Plaintiff's employment, Defendant treated Plaintiff

differently, and worse, than white and male employees.  Evidence of Defendant's race

and sex discriminatory treatment towards Plaintiff includes that which is set forth herein.

26.     Baker told Plaintiff that he gravitated towards the "cookie cutter image",

meaning a "white man in a suit".

27.     When Plaintiff submitted vacation time to Baker for approval, he tried to

pressure her not to take the time or to return to work earlier than she planned.  To

Plaintiff's knowledge and belief, Baker did not engage in such conduct with his white

4

and/or male direct reports.

28.    Baker sent text messages to Plaintiff with black thumbs-up emojis.  To Plaintiff's information and belief, Baker did not do so when communicating with white employees.

29.    Plaintiff is aware that at least one other female employee complained to Defendant that Baker treated her in a negative manner due to her sex and her race (Black).

30.    In around early 2019, Plaintiff complained to Jessenia Inchautegui-Williams, Human Resources Manager and one of Baker's direct reports, that she thought that Baker was treating her differently because she was a Black woman.

31.    Williams' response to Plaintiff's complaints of race discriminatory conduct was to tell Plaintiff that Baker had complained that Plaintiff did not answer her phone.

32.    In or around early December 2019, Plaintiff learned that Defendant had promoted a white male Office Manager into the position of Six Sigma Black Belt for the Mid-Atlantic Group.

33.    To Plaintiff's information and belief, Defendant either did not post the Six Sigma Black Belt position or it posted the position for a very short period of time which did not allow Plaintiff the opportunity to see the posting and apply for the position.

34.    To Plaintiff's information and belief, she was more qualified for the Six Sigma Black Belt position than the white male whom Defendant promoted into that position.

35.    Defendant did not give Plaintiff an explanation as to why she was not

promoted into the Six Sigma Black Belt position.

36.　　Plaintiff had repeatedly discussed her desire for career advancement within Defendant, including being promoted to the Six Sigma Black Belt position.

37.　　Starting in or around early 2020, Plaintiff complained to Defendant that two (2) of her direct reports, both of whom were black women, had reported that the (white, male) Plant Manager, discriminated against them based on their race.

38.　　The (white, male) Plant Manager about whom the Black female employees complained reported directly to Baker.

39.　　When Plaintiff complained to Baker about the race discriminatory conduct to which the (white, male) Plant Manager was subjecting her black female direct reports, Baker laughed.

40.　　Baker told Plaintiff that the (white, male) Plant Manager who was engaging in the race discriminatory conduct towards the black female employees was just an "immature hothead".

41.　　When Plaintiff followed up with Baker regarding her complaints of race discrimination, he pressured her to terminate one of the black female employees who had complained of race discrimination.

42.　　Plaintiff told Baker that there was no basis to terminate the black employee who had complained of race discrimination.

43.　　Plaintiff also told Baker that Defendant should take the complaints of race discrimination seriously and discipline the white employee who was the subject of the complaints.

44.　　Baker did not respond to Plaintiff's complaints of race discriminatory

conduct.

45.     When Plaintiff complained to Inchautegui-Williams about Defendant's race discriminatory conduct, Inchautegui-Williams' response was that the complaints of race discrimination were just the employees' perception.

46.     Defendant failed to take appropriate remedial and/or corrective action regarding Plaintiff's complaints of race discrimination

47.     On or about March 18, 2020, Plaintiff told Baker that she was concerned about being physically present in the office during the Covid-19 pandemic due to her medical conditions and that she was immunocompromised as a result of the same.

48.     Plaintiff advised Defendant that the medical conditions to which she was referring were asthma and Irritable Bowel Syndrome ("IBS").

49.     Defendant was already aware of Plaintiff's medical conditions.

50.     Asthma is a condition that restricts and swells the airways, making it difficult to breathe.

51.     Plaintiff was treated for asthma during her employment with Defendant. She used an inhaler, and medication, to treat her asthma when she had issues regarding the same.

52.     Plaintiff was diagnosed with IBS in around 2015.

53.     IBS is a chronic, gastrointestinal disorder that affects the large intestine and may cause abdominal pain and discomfort.

54.     Plaintiff was treated for IBS during her employment with Defendant. She used medication to alleviate the symptoms when she had a flare-up.

55.     When Plaintiff spoke to Baker about her medical conditions on or about

March 18, 2020, she told him that both her asthma and her IBS, and the medication that she took to treat her IBS, weakened and impaired her immune system

56.     Plaintiff requested that she be permitted to work from home as an accommodation for her medical conditions.

57.     Baker told Plaintiff to speak with Inchautegui-Williams about her medical conditions and her request for an accommodation for the same.

58.     In a subsequent meeting with Baker and Inchautegui-Williams, Plaintiff again told them that she had medical conditions, including asthma, and that, as a result, she was immunocompromised and that the same made her more vulnerable to the effects of Covid-19.  Plaintiff, again, requested to work from home as an accommodation for her medical conditions.

59.     Baker questioned Plaintiff as to how she could accomplish her goals and be productive if she worked from home. Plaintiff answered all of his questions, with specificity, as to how she could continue being productive and meeting her goals while working remotely.

60.     Plaintiff was told that the situation was fluid, and that Defendant would let her know if she would be allowed to work from home.

61.     Defendant subsequently advised Plaintiff that she would not be permitted to work from home.

62.     Shortly after Plaintiff met with Baker and Inchautegui-Williams about her request to work remotely, and Defendant's denial of the same, Defendant ordered non-essential employees to work from home due to the pandemic.

63.     To Plaintiff's information and belief, white and/or male employees in her

position, Office Manager, were permitted to work from home.

64.     When Plaintiff asked Baker why she was not being allowed to work from home, given Defendant's order to non-essential employees, he became angry with her and told her that she would not be allowed to work from home.

65.     Defendant required Plaintiff to continue coming into the office.

66.     On or about March 24, 2020, Plaintiff complained to Defendant about its denial of her accommodation request for her medical conditions.

67.     Defendant's response to Plaintiff's complaints was that management was engaged in discussion about the possibility of everyone working from home.

68.     Defendant continued to require Plaintiff to work in the office.

69.     On or about March 25, 2020, Plaintiff, again, requested that she be allowed to work from home as a reasonable accommodation for her medical conditions.

70.     On that same date, Plaintiff also expressed to Inchautegui-Williams that she was very upset about Baker's hostility towards her in connection with her advising of her medical conditions and requests for an accommodation for the same.

71.     Inchautegui-Williams' response to Plaintiff's repeated complaints was that management was engaged in discussion about the possibility of everyone working from home.

72.     Defendant continued to require Plaintiff to work in the office.

73.     To Plaintiff's information and belief, Defendant permitted white Office Managers, including those who did not have medical conditions and did not request reasonable accommodations for medical conditions, to work from home.

74.     To Plaintiff's information and belief, Defendant permitted white

employees, including employees under Baker's supervision, to work from home.

75.     On or about April 2, 2020, Defendant terminated Plaintiff's employment, effective immediately.

76.     Defendant told Plaintiff that the reason for her termination was that her position was being eliminated.

77.     When Plaintiff asked whether the Office Manager position, the same that she held, was being eliminated through the company or throughout the division in which she worked or in the group which she worked, Baker confirmed that the only Office Manager that was being eliminated was hers.

78.     Plaintiff complained that Defendant was retaliating against her based on her requests for accommodations for her medical conditions.

79.     Defendant did not respond to Plaintiff's complaints that the company as retaliating against her based on her medical conditions and her requests for accommodations for the same.

80.     When Plaintiff asked whether she would be able to return to employment with Defendant in the future, Baker said that he did not see that as a possibility.

81.     When Plaintiff asked whether she could be transferred into another position at Defendant, Baker told her no.

82.     To Plaintiff's information and belief, Defendant assigned her job duties and responsibilities to a white male.

83.     Defendant failed to provide a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

84.     Defendant's asserted reason for terminating Plaintiff's employment was

pretextual.

85.     To Plaintiff's information and belief, she was the only one of Baker's direct reports with medical conditions who requested a reasonable accommodation.

86.     To Plaintiff's information and belief, Defendant retained white Office Managers while terminating her employment.

87.     At the time that Defendant terminated Plaintiff's employment, she was one of about (4) Black managers out of approximately twelve (12) who reported directly to Baker.

88.     At the time that Defendant terminated Plaintiff's employment, it terminated her and another Black manager who reported directly to Baker.

89.     At around the same time that Defendant terminated Plaintiff's employment, it also terminated the employment of one of the two (2) black female employees who had complained to Plaintiff about race discriminatory conduct in around early 2020, and which Plaintiff reported to Defendant.

90.     Defendant terminated the employment of the other black female employee who had complained to Plaintiff about race discriminatory conduct, and which Plaintiff reported to Defendant, in around early 2020 about two (2) weeks later.

91.     To Plaintiff's information and belief, Defendant hired a white male into an open position in the Service Department in or around mid-April 2020.

92.     Plaintiff was qualified for the open position in the Service Department for which the white male was hired.

93.     No one at Defendant talked to Plaintiff about the open position in the Service Department or gave her an opportunity to apply for the same.

94.     To Plaintiff's information and belief, Defendant hired a white male into the open position of Catalog Manager in or around mid-May 2020.

95.     The white male whom Defendant hired into the Catalog Manager position replaced the Black employee whom Defendant had terminated at around the same time as Plaintiff and who also reported directly to Baker.

96.     Upon Plaintiff's information and belief, Defendant told the recently terminated black Catalog Manager that his position had been eliminated.

97.     Plaintiff's race was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including subjecting her to a hostile work environment, failing to promote her, and terminating her employment.

98.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including subjecting her to a hostile work environment, failing to promote her, and terminating her employment.

99.     Plaintiff's complaints about Defendants' discriminatory conduct were motivating and/or determinative factors in connection with Defendant's retaliatory conduct to which Plaintiff was subjected, including terminating her employment.

100.     At all material times hereto, Plaintiff was disabled, and/or had a record of a disability, and/or was regarded as being disabled.

101.     Plaintiff's disabilities, including her record of disability and Defendants' regarding her as having a disability, were motivating and determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including the termination of Plaintiff.

102.    Defendant failed to provide Plaintiff with reasonable accommodation for her known disabilities by granting her request for an accommodation.

103.    Defendant retaliated against Plaintiff for requesting reasonable accommodations for her disability.

104.    Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

105.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

106.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I – Title VII**

107.     Plaintiff incorporates herein by reference paragraphs 1 through 106 above, as if set forth herein in their entirety.

108.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

109.    Said violations were done with malice and/or reckless indifference.

110.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys'

fees and costs.

111.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

112.    No previous application has been made for the relief requested herein.

## COUNT II – Section 1981

113.    Plaintiff incorporates herein by reference paragraphs 1 through 113 above, as if set forth herein in their entirety.

114.    By committing the foregoing acts of discrimination and retaliation, Defendant has violated Section 1981.

115.    Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

116.    As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

117.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

118.    No previous application has been made for the relief requested herein.

## COUNT I - ADA

119.    Plaintiff incorporates herein by reference paragraphs 1 through 118 above, as if set forth herein in their entirety.

120. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADA.

121. Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

122. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

123. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

124. No previous application has been made for the relief requested herein.

## COUNT IV – PHRA

125. Plaintiff incorporates herein by reference paragraphs 1 through 124 above, as if set forth herein in their entirety.

126. Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

127. Said violations were intentional and willful.

128. As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

129. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts

unless and until the Court grants the relief requested herein.

130.   No previous application has been made for the relief requested herein.

## **COUNT V – PFPO**

131.   Plaintiff incorporates herein by reference paragraphs 1 through 130 above, as if set forth herein in their entirety.

132.   Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PFPO.

133.   Said violations were intentional and willful.

134.   As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

135.   Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

136.   No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)   declaring the acts and practices complained of herein to be in violation of Title VII;

(b)   declaring the acts and practices complained of herein to be in violation of Section 1981;

16

(c)     declaring the acts and practices complained of herein to be in violation of the ADA;

(d)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(e)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(f)     enjoining and permanently restraining the violations alleged herein;

(g)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(h)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(j)     awarding punitive damages to Plaintiff under Title VII;

(k)     awarding punitive damages to Plaintiff under Section 1981;

(l)     awarding liquidated damages to Plaintiff under the ADA;

(m)     awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADA, the PHRA, and the PFPO;

(n)     awarding Plaintiff the costs of suit, expert fees, and other disbursements, and reasonable attorneys' fees; and,

(o)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated:  August 4, 2021            BY:  _____
                                    Caren N. Gurmankin (205900)
                                    1525 Locust Street, 9th Floor
                                    Philadelphia, PA 19102
                                    (215) 545-7676

                                    Attorney for Plaintiff,
                                    Tara Cave

Exhibit "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | O  FEPA<br>X  EEOC | |

| STATE OR LOCAL AGENCY:  Pennsylvania Human Relations Commission;<br>Philadelphia Commission on Human Relations | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Tara Cave** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>redacted |
|---|---|
| STREET ADDRESS<br>redacted | CITY, STATE AND ZIP<br>redacted | DATE OF BIRTH<br>redacted |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Cintas Corporation** | NUMBER OF EMPLOYEES, MEMBERS<br>> 15 | TELEPHONE (Include Area Code)<br>(215) 268-7911 |
|---|---|---|
| STREET ADDRESS<br>10080 Sandmeyer Lane | CITY, STATE AND ZIP<br>Philadelphia, PA 19116 | COUNTY<br>Philadelphia |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>X Race   O  Color   X Sex   O  Religion   O  National Origin<br>X Retaliation   O Age   X Disability   O Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | *Earliest*          *Latest*  04/02/2020 |

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondent on or about December 19, 2005.  I last held the position of Office Manager.  I reported to Jonathan Baker (white, male), General Manager.  Baker reported to Greg Birkenhauer (white, male), Vice President, Operations.

Respondent failed to promote me to a position for which I was qualified and instead selected a less qualified, white, male employee for the position.  Respondent failed to promote me because of my race and/or sex.  Respondent terminated my employment after I informed Respondent of my disability and sought reasonable accommodations for my disability.  Respondent terminated my employment because of my race and/or sex and/or disability and/or seeking reasonable accommodations for my disability.  Respondent retained white and/or male and/or nondisabled[a] employees who had not sought reasonable accommodations[b] in positions for which I was more qualified to perform when I was terminated.  I was the only Office Manager terminated on April 2, 2020.

I consistently demonstrated positive performance and dedication to Respondent.  I performed my duties in a highly-competent manner.

| X I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |

| Date:              Charging Party *(Signature)*:<br>06/29/20 | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

[a] References herein to a person not having a disability are all to the best of my knowledge.
[b] References herein to a person not having sought reasonable accommodations for a disability are all to the best of

EEOC Charge of Discrimination
Page 2 of 6
Initials of Charging Party – TC

2.    Harm Summary

I have been discriminated against because of my race (black), my sex (female), and my disability (including history of and regarded as), and retaliated against because of my seeking reasonable accommodations for my disability.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)  Respondent has an underrepresentation of black employees, especially in high-level positions.

(b)  Respondent has an underrepresentation of female employees, especially in high-level positions.

(c)  Baker had no role in my being hired at Respondent.

(d)  I repeatedly expressed to Baker my desire to be promoted, including being promoted to the Six Sigma Black Belt for the Mid-Atlantic Group position.

(e)  On December 4, 2019, Respondent failed to promote me to the Six Sigma Black Belt for the Mid-Atlantic Group position.  In an email to Respondent's employees, I learned that that Ed Jezorwski (white, male) was promoted to the Six Sigma Black Belt for the Mid-Atlantic Group position.  I was more qualified for the position.  I had no opportunity to apply for the position because the position, to my knowledge, was not posted.  I would have applied for the position if I was aware that it was posted.

(f)  Respondent failed to promote me because of my race and/or my sex.

(g)  Respondent offered no explanation, including the selection criteria, as to why I was not promoted and the less qualified, white, male employee was promoted instead.

(h)  On December 4, 2019, following receipt of the above email, Baker approached me at my desk and stated that Jezorwski's promotion was great news.  I asked Baker when the position had been posted because I had not been made aware that the position was open.  Baker did not deny that the position was not posted, and responded: "well, you know how these things go."

(i)  Baker treated black and/or female employees, including me, differently and worse, and in a more hostile and dismissive manner, than he treated white and/or male employees.

(j)  Baker told me on multiple occasions that he gravitated toward "the cookie cutter image," as in, "a white man in a suit."

(k)  Baker sent me text messages with black thumbs-up emojis.  I have never seen Baker use a black thumbs-up emoji when communicating with white employees.

(l)  Baker held me to a higher, more stringent standard than he held white and/or male employees.

(m)  I felt pressure from Baker to cancel my vacation time, after it was approved, and never witnessed Baker acting in the same way toward white and/or male employees.

(n)  Black and/or female employees, including Erica Parker (black, female), Health and Safety Coordinator, complained of Baker's discriminatory comments and conduct

EEOC Charge of Discrimination
Page 3 of 6
Initials of Charging Party – $TC$

(o) Respondent did not, to my knowledge, take any action to remedy or prevent the race and/or sex discrimination at Respondent.

(p) Respondent did not, to my knowledge, investigate the complaints of race and/or sex discrimination at Respondent.

(q) On March 11, 2020, Baker told me that I made him feel awkward and uncomfortable. When I asked if I could do anything to change that, he responded that he preferred "the cookie cutter image," as in, "a white man in a suit," and referenced Corey Eldredge (white, male), FS Operations Manager, and Jordan Hall (white, male), Sales Manager. I stated that, as a black female, those are things about myself that I could not change. Baker laughed.

(r) On March 18, 2020, I told Baker that I was concerned about being physically present in the office during the COVID-19 pandemic, as I had asthma and was immunocompromised. I requested to work from home, as an accommodation for my medical conditions. Baker instructed me to speak with Jessenia Inchautegui-Williams (Hispanic, female), Human Resources Manager.

(s) I was able to perform my job duties and responsibilities from home.

(t) On March 18, 2020, following the above conversation, in a meeting with Baker and Inchautegui-Williams, I again stated that I had medical conditions, including asthma and being immunocompromised, that made me more vulnerable to the effects of COVID-19, and requested to work from home as an accommodation for my medical conditions. Baker stated that he was concerned about my team's productivity and asked how I would accomplish my team's goals if I worked from home. I answered his questions, including discussing reporting systems that were available to me remotely to ensure the team's productivity measures were met daily. Inchautegui-Williams stated that I should feel lucky to still have a job at all. I was told that the situation was fluid and changing, and that they would let me know if I would be allowed to work from home. Baker and Inchautegui-Williams appeared visibly annoyed.

(u) Respondent denied my request for the reasonable accommodation of working from home due to my medical conditions, and I was required to continue physically reporting to Respondent's office.

(v) On March 20, 2020, on a conference call for employees with Jim Rozakis (white, male), Rental Division President and Chief Operating Officer, he stated that, due to COVID-19, non-essential employees must work from home.

(w) On March 20, 2020, following the above conference call, Baker approached me and told me that I should not expect to work from home. I stated that, in the conference call, Rozakis instructed that non-essential employees must work from home. I stated that I did not understand why I was being denied my request to work from home, especially because Office Managers in Respondent's other offices were working from home. Baker was visibly angry, and repeated that I would not be working from home.

(x) Respondent failed to accommodate me for my disability, and I was required to continue physically reporting to Respondent's office.

EEOC Charge of Discrimination
Page 4 of 6
Initials of Charging Party – TC

(y) On March 24, 2020, in a meeting with Inchautegui-Williams, I complained that Respondent was refusing to allow me to work from home as an accommodation for my medical conditions, including asthma and being immunocompromised. I stated that I did not understand why I was being prevented from working from home, and again requested the reasonable accommodation of working from home due to my medical conditions. I asked her to provide me with the form to request a reasonable accommodation under the ADA. Inchautegui-Williams refused to provide me with the accommodation request form. She stated that completing a form would not be necessary because management was holding conversations that may result in everyone being able to work from home.

(z) Respondent failed to reasonably accommodate me for my disability, and I was required to continue physically reporting to Respondent's office.

(aa) On March 25, 2020, in a meeting with Inchautegui-Williams, I again requested the reasonable accommodation of working from home due to my medical conditions, and stated that I did not understand why Baker seemed to be angry with me, especially ever since I requested to work from home due to my medical conditions. Inchautegui-Williams did not deny that Baker was angry with me and again stated that completing a form to request an accommodation was not necessary because management was holding conversations that may result in everyone being able to work from home.

(bb) Respondent failed to reasonably accommodate me for my disability, and I was required to continue physically reporting to Respondent's office.

(cc) I continued to physically report to Respondent's office, as required.

(dd) Respondent failed to remedy or prevent the disability discrimination and retaliation to which I was subjected.

(ee) On April 2, 2020, in a meeting with Baker and Inchautegui-Williams, Respondent terminated my employment, effective immediately. The stated reason was that my position was being eliminated. I asked if the Office Manager position was being eliminated throughout Respondent's offices. Baker stated it was not. I asked if the Office Manager position was being eliminated throughout Respondent's Rental Division. Baker stated it was not. I asked if the Office Manager position was being eliminated throughout the Mid-Atlantic Group. Baker stated it was not. He stated that the Office Manager position was only being eliminated at the office where I worked. I complained that I felt that I was being retaliated against for my requests to work from home, due to my medical condition. I asked if I would be able to return to my position in the future. Baker stated that he did not see that as a possibility. I asked if there was another position, in another department or office location, that I could be moved to. Baker stated that there was not. Baker told me that there was a hiring freeze at Respondent.

(ff) Respondent's stated reason for my termination is pretext.

(gg) Respondent terminated my employment because of my race and/or my sex and/or my disability and/or my seeking reasonable accommodations for my disability.

(hh) I was the only Office Manager employee that Respondent terminated on April 2, 2020.

(ii) Respondent assigned a portion of my job duties and responsibilities to Eldredge (white, male). I was more qualified to perform my job duties and responsibilities than the nondisabled, white, male employee who had not sought reasonable accommodations for a disability.

(jj) Respondent retained Shanna Renne (white), Office Manager, and Larissa Hawley (white), Office Manager, when I was terminated. I was more qualified for the Office Manager position than the nondisabled, white employees who had not sought reasonable accommodations for a disability who were retained when I was terminated.

(kk) Respondent retained nondisabled, white, male, and/or nondisabled employees who had not sought reasonable accommodations for a disability in positions for which I was more qualified.

(ll) Respondent offered no explanation, including the selection criteria, as to why I was terminated while male, nondisabled, and/or noncomplaining employees who had not sought reasonable accommodations for a disability were retained.

(mm) Respondent had allowed white and/or nondisabled Office Managers, including Petra Wicker (white, nondisabled) and Alexandria Brown (nondisabled), to work from home.

(nn) I had no opportunity or option to remain employed with Respondent.

(oo) On or about April 13, 2020, Respondent hired Scott Kelly (white, male), Service Department. I was more qualified for the position than Kelly but was not given the opportunity to apply or be transferred into the position.

(pp) On or about May 18, 2020, Respondent hired John Hughes (white, male), Catalog Manager. I was more qualified for the position than Hughes but was not given the opportunity to apply or be transferred into the position. Hughes replaced Shaquille Spann (black), who Respondent terminated approximately two (2) weeks before, in or about the beginning of May 2020. The stated reason was position elimination.

(qq) I had no performance or disciplinary issues throughout my employment.

(rr) Respondent's race, sex, and disability discriminatory and retaliatory conduct and comments have caused me emotional distress.

(ss) Respondent did not target or treat in the same way similarly-situated white, male, or nondisabled employees or employees who sought a reasonable accommodation for a disability.

**EEOC Charge of Discrimination**
**Page 6 of 6**
**Initials of Charging Party –** TC

B.    1.    Respondent's Stated Reasons

(a)    Respondent's stated reason for terminating my employment, that my position was being eliminated, is pretext for race and/or sex and/or disability discrimination and/or retaliation for seeking accommodations for my disability.

(b)    Respondent has provided no explanation for failing to promote me to the Six Sigma Black Belt for the Mid-Atlantic Group position, for which I was qualified, and instead selecting a less qualified, white, male employee.

(c)    Respondent has provided no explanation for failing to remedy or prevent the race, sex, and disability discrimination and retaliation against me.

C.    1.    Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my race (black), sex (female), and my disability (including history of and regarded as), and has retaliated against me based on my seeking accommodations for my disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"); and the and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO"), as set forth herein.

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Tara Cave v. Cintas Corporation**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC   protects your state rights, especially since there may be circumstances in which state and federal laws   and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are   unlawful discrimination.  If PHRC determines that your PHRC complaint is untimely, it will be   dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with   your signature under the verification below, will constitute filing with the PHRC.  You have chosen   EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept   EEOC's finding.  If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to   file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency,   the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is   required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file   your complaint in state court.  PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

 X   I want my charge filed with PHRC.  I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint.  I request EEOC to transmit it to PHRC.

 X   *I understand that false statements in this complaint are made subject to the penalties of*
18   *Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X _____  06/29/20
　　　Signature and Date

____   I do not want my charge dual filed with PHRC

　　　　　　　　　_____
　　　　　　　　　Signature and Date

Exhibit "2"

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Tara Cave**<br>~~redacted~~<br>**Brookhaven, PA 19015** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

| | | |
|---|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-04473** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9707** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter*                                    **5/12/2021**

Enclosures(s)

**Dana R. Hutter,**
**Deputy Director**                                    *(Date Issued)*

cc:

| | |
|---|---|
| **Kasey Bond, Esq.**<br>**KEATING MUETHING & KLEKAMP PLL**<br>**One East Fourth Street, Suite 1400**<br>**Cincinnati, OH 45202** | **Emily R. Derstine Friesen, Esq.**<br>**CONSOLE MATTIACCI LAW, LLC**<br>**1525 Locust Street**<br>**9th Floor**<br>**Philadelphia, PA 19102** |